UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Nancy J. King,                                    Civil No. 06-2443 (DSD/JJG)

      Plaintiff,
                                                **REPORT**
v.                                                                                    **AND**
                                               **RECOMMENDATION**
Jo Anne B. Barnhart,
Commissioner of Social Security,

      Defendant.

---

Plaintiff Nancy J. King ("King") brought this case petitioning for judicial review of the Commissioner of Social Security's (Commissioner) decision denying her application for Social Security disability benefits. The matter is before this Court on King's motion for summary judgment (Doc. No. 9) and on Defendant Commissioner of Social Security's ("Commissioner") cross-motion for summary judgment (Doc. No. 13). The motions are referred to this Court for a report and recommendation in accordance with 28 U.S.C. § 636 and D. Minn. LR 72.1. For the reasons set forth below, this Court recommends that the Commissioner's motion be granted and the case be dismissed with prejudice.

**I.     BACKGROUND**

King is 50 year old woman. (AR 64).[1] She was 46 when she first applied for Social Security disability benefits. King completed the ninth grade and later obtained a nursing assistant certificate. (AR 458). King's last job before applying for disability benefits was as an assistant activities director in an assisted living complex. (AR 115).

---

[1] The Court cites to the administrative record in this matter as "AR __".

King suffers from numerous medical impairments. Specifically, she is severely impaired by "degenerative joint disease of the thoracic spine, degenerative disc disease of the cervical spine, status post a laminectomy and fusion, fibromyalgia, migraine headaches, irritable bowel syndrome, bilateral hip bursitis, left knee patello femoral syndrome, bilateral carpal tunnel syndrome, status post releases, a history of asthma, chronic pain syndrome, a history of depression, and an anxiety disorder." (AR 20).

The record contains competing medical opinions regarding King's ability to work despite her impairments. On November 14, 2001, Dr. Yaszemski, King's orthopedic surgeon, wrote a letter regarding her condition after her cervical spine decompression and fusion. He stated that:

> She has rehabilitated from the surgery and her fusion is solid. I have reviewed with her the responsibilities of her job in the kitchen, and it is my opinion that she will not be able to return to that work. I recommend that you consider her for transfer to a different job within your institution that does not require the level of physical labor associated with her kitchen job.

(AR 273).

On June 10, 2002, another of King's treating medical providers, Saleh Alrajhi, D.O., stated that:

> Patient tells me that she is 65-75% better in all aspects including depression, cervicalgia, back pain and also tells me that her gastroesophageal reflux disease is doing really well on PREVACID and her insomnia is much improved and she takes ATIVAN now for anxiety 1 mg PO BID and she is requesting refills.....The patient is feeling good. Things are improving and no new complaints. Patients admits to 65-75% improvement in her upper back pain and neck pain and she rates her pain at about a 3/10.... Depression is much improved. Patient is not crying at this time like she did at every other visit. She is accompanied today by her husband and both admit that she is much better and ready to go back to work this Wednesday.... Psychosocial counseling which includes depression and anxiety management and including also patient going back to work and I did discuss with her the benefits of going back to work to her general health including her mental health and she accepted that and her husband agreed to that too..... I released her back to work starting on 6/12/02 and she agreed to that.

(AR 171-172).

2

In a letter dated February 19, 2004, Dr. Bergstrom, an internist, described King's impairments and opined on her ability to work, stating:

> She remains quite limited in her ability to work since anything more than her minimal ADLs [activities of daily living] cause worsening pain and disability.... She is on treatment but has not had a significant improvement in her ability to work. Her residual capacity is that she cannot do meaningful physical labor. Anything more than 30 minutes per day that is done on a repetitive basis will aggravate her symptoms. She has a need to change positions frequently. She would not be allowed do to any carrying or lifting either. I do not do formal disability evaluations so I am unable to give you a percent disability based on her evaluation. Her present treatment with medications and physical therapy is all that I prescribe. I do not anticipate her having a significant improvement the rest of her life.

(AR 390-91).

In August 2004, Dr. Bergstrom completed a residual functional capacity questionnaire in which he concluded: "She is unemployable and not likely to improve." (AR 297).

King filed an application for Social Security disability benefits on July 31, 2003. (AR 64). The application states that she became unable to work due to her disabling condition on June 2, 2000 (AR 64). Her application was initially denied on November 4, 2003. (AR 29-30). On February 5, 2004, the initial denial was affirmed. (AR 31-32). King requested an administrative hearing, which was held on June 23, 2005 in Rochester, Minnesota. (AR 448). The Administrative Law Judge ("ALJ") issued an unfavorable decision on October 25, 2005, determining that, although King was severely impaired, she had the residual functional capacity to perform past relevant work as an office helper and an activity aide. (AR 20, 27). On April 21, 2006, the Appeals Council denied King's request for review of the ALJ's decision. (AR 6). King then filed the instant case seeking review of the Commissioner's decision to deny her disability benefits.

## II.   ANALYSIS

The ALJ denied King's application for disability benefits based on his conclusion that she retained the residual functional capacity ("RFC") to perform past relevant work. (AR 27-28). Thus, this case centers not on whether King is impaired, but rather whether the degree of her impairments preclude her from performing her past work.

King argues that the ALJ erred by: 1) failing to properly weigh the opinion of one of her treating physicians, Dr. Bergstrom; 2) failing to properly weigh her subjective complaints of pain; and 3) misunderstanding the subjective nature of fibromyalgia. The Court addresses each of King's arguments below.

### A.   Standard of Review

When reviewing the findings of the ALJ, a court considers whether that decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g); *Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). The court must consider evidence that both favors and detracts from the decision. *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998). So long as more than a scintilla of evidence supports the ALJ's decision, that decision shall be affirmed, even though substantial evidence may support a contrary outcome. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).

### B.   Weighing of Medical Evidence

King contends that the ALJ erred by slighting the opinion of one of her treating doctors, Dr. Bergstrom. In a letter dated February 19, 2004, Dr. Bergstrom described King's impairments and opined

on her ability to work, stating that she was unable to do meaningful physical labor. (AR 390-91). A few months later, in August 2004, Dr. Bergstrom completed an RFC questionnaire in which he concluded: "She is unemployable and not likely to improve." (AR 297).

Dr. Bergstrom's opinions are not, however, the only evidence in the record regarding King's ability to work despite her impairments. On June 10, 2002, another of King's treating doctors, Dr. Alrajhi, released her back to work, noting that King and her husband agreed that "she is much better and ready to go back to work...." (AR 171-172).

On November 14, 2001, another of King's physicians, Dr. Yaszemski, wrote a letter regarding her condition after her cervical spine decompression and fusion. Although he advised King not to return to her job as a kitchen worker, he stated that she could perform less physical work and recommended that her employer transfer her to another job. (AR 273).

Thus, the record contains differing medical opinions regarding King's ability to work. The weighing of medical evidence is the province of the ALJ, not of this Court. The ALJ's decision reflects a thorough consideration of all the medical evidence in the record, including the opinions of Dr. Bergstrom. The ALJ determined, however, that the opinions of King's other treating physicians, Drs. Alrajhi and Yaszemski, which were confirmed by the opinion of the medical expert, Dr. Steiner, and consistent with the evidence in the record as a whole, established that King had the RFC to do past relevant work. (AR 27). After carefully reviewing the medical evidence, the ALJ concluded, "[T]he record documents that the symptoms of her fibromyalgia have generally remained stable with medication therapy and exercise, that she generally has maintained a good range of motion in all of her joints, and that her treating physicians have encouraged her to exercise." (AR 26).

The ALJ's weighing of this evidence was supported by substantial evidence in the record. The Court notes that Dr. Bergstrom's opinions are the most recent of the various doctors' opinions and that his consideration of King's ability to work may be more comprehensive, than, for example that of Dr. Yaszemski, the surgeon who opined on her ability to work after her back surgery. This Court, however, cannot second guess the ALJ's reasonable weighing of conflicting opinions by treating medical providers. *See Brachtel v. Apfel*, 132 F.3d 417, 420 (8th Cir. 1997); *Bentley v. Shalala*, 52 F.3d 784, 785-786 (8th Cir. 1995). Even if the Court were to disagree with the ALJ's weighing of the various physician opinions, such disagreement is insufficient to overturn the ALJ's decision if it is supported by substantial evidence. *Davis,* 239 F.3d at 966. The opinions of Drs. Alrajhi and Yaszemski, combined with that of the medical expert, are a sufficient basis for the ALJ's determination that King could perform past relevant work.[2]

Moreover, the ALJ properly set forth his reasoning for giving less weight to Dr. Bergstrom's opinions versus those of King's other treating physicians. He explicitly reviewed Dr. Bergstrom's treatment history of King. (AR 24-27). He stated that Dr. Bergstrom's opinions were internally inconsistent, as well

---

[2]King argues that her disability onset date was June 25, 2003, rather than the June 2, 2000 date that appears on her application for benefits. (AR 64). Therefore, King argues, the opinions of Drs. Alrajhi and Yaszemski, which were prepared before June 25, 2003, are irrelevant to her ability to function in the workplace after that date. The Court finds that substantial evidence exists in the record to support the ALJ's use of June 2, 2000 as King's disability onset date. King stated in her benefits application that June 2, 2000 was her onset date. (AR 64). This date is also reflected on another form King completed in connection her benefits application. (AR 148). The ALJ referred to this date as her onset date at the benefits hearing, and was not told otherwise by King or her lawyer. (AR 450). King explains that a Social Security field officer recommended this earlier date after talking with King about her variable level of employment between 2000 and 2003. (AR 105). King does not say that she disagreed with or disputed the field officer's assessment. Thus, the June 2, 2000 date was chosen and substantial evidence in the record exists supporting its continued use here.

as inconsistent with the reports of King's other treating physicians. (AR 26-27). The ALJ stated that he was also concerned that Dr. Bergstrom's reports were not based on his own assessment of King, but instead just reported King's own assessment of her situation. (AR 26). The ALJ noted that Dr. Bergstrom filled out one of the questionnaires upon which King relies together with King while she was sitting in his office. *Id.* The ALJ, therefore, provided "good reasons" for the weight he afforded Dr. Bergstrom's opinions. *See* 20 C.F.R. § 404.1527(d)(2); *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005).

### C. King's Complaints of Pain

King also contends that the ALJ improperly discounted her subjective complaints in concluding that she retained the RFC to perform past work. This Court finds that the ALJ properly and explicitly analyzed the evidence in light of the factors outlined in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984), and based his weighing of King's subjective complaints on substantial evidence.

The ALJ considered King's activities of daily living, noting that she is able to cook, clean, shop, read, watch TV, listen to music, groom and bathe herself, visit with friends and relatives, do needle work, pay bills and handle finances, go to movies, do laundry with help, go for walks, and prepare meals. (AR 22).

The ALJ also considered other credibility factors as required by *Polaski*. The ALJ painstakingly reviewed the medical evidence, including the observations of King's treating physicians, and found that it was inconsistent with total disability. (AR 22-27). The ALJ noted that King's surgeon stated that she was "rehabilitated" from her fusion surgery, that the fusion was "solid," and that she could return to work in job involving less physical labor than her kitchen job. (AR 273). He stated that another of her treating

physicians had released her back to work and opined that working would be good for her mental health. (AR 171-172). He detailed many additional visits by King to her treating physicians, including noting the pain she described in these visits and the location of such pain. (AR 22-27).

The ALJ also considered King's medications, stating that she took a number of different medications to manage her impairments and noting that no side effects reducing her RFC were found in the record (AR 27). *See Polaski*, 739 F.2d at 1322 (listing dosage, effectiveness, and side effects of medication as factors to consider in evaluating subjective complaints).

The ALJ also properly considered King's work history, which reflected variable employment ranging from no earnings in some years to almost full-time employment in others. *Id.* (listing work history as relevant factor in assessing subjective complaints). The ALJ concluded that this could suggest that her underemployment was unrelated to her impairments. (AR 27).

In sum, the ALJ explicitly stated that he considered the *Polaski* factors. His analysis confirms this. He did not focus solely on King's daily activities, but instead also considered all evidence in the record regarding her pain, symptoms, treatment, and other factors. This analysis amply satisfied the *Polaski* requirements. *Polaski*, 739 F.2d at 1322; *Curran-Kicksey v. Barnhart*, 315 F.3d 964, 969-970 (8th Cir. 2003).

### D. Nature of Fibromyalgia

King argues that the ALJ erred by misunderstanding the nature of fibromyalgia. She cites various cases in which courts have held that fibromyalgia can be a disabling condition. The ALJ did not find that fibromyalgia is not a disabling condition. Rather, he found that King was severely impaired by a number of conditions, including fibromyalgia. (AR 21). He then took her fibromyalgia into account when

considering her RFC, determining that King could perform unskilled, light work despite her impairments. (AR 26). Thus, the ALJ properly considered King's fibromyalgia. *Pirtle v. Astrue*, 479 F.3d 931, 935 (8th Cir. 2007).

King contends that the ALJ's misunderstanding of fibromyalgia is reflected in his reliance on medical examiner Dr. Steiner's testimony regarding the lack of physical findings in the record to support King's alleged symptoms. Dr. Steiner did not testify that he only looked to physical findings to support King's fibromyalgia. Rather, he testified:

> Q: What kinds of limitations would you impose given the record that you've reviewed?
>
> A. Well, um, the, ah, the chief problem appears to be fibromyalgia and, ah, perhaps chronic pain syndrome. Otherwise, the findings, the physical findings are minimal and, ah, I , I have to look mainly to the physical findings.

(AR 485).

This exchange does not reflect Dr. Steiner's opinion that King showed insufficient physical evidence of fibromyalgia. Instead, it reflects Dr. Steiner's conclusion that King's main medical problem was fibromyalgia, rather than her other conditions, which were not supported by significant physical findings. Thus, King's argument regarding undue reliance on physical findings is unsupported by the record.

### III.  CONCLUSION

The ALJ's decision was supported by substantial evidence in the record. The ALJ determined that King suffers from a number of severe impairments, including fibromyalgia. He reasonably weighed competing medical evidence to determine that King is able to perform past work. His evaluation of King's subjective complaints of pain included a consideration of the *Polaski* factors and was supported by

substantial evidence. He did not misunderstand the nature of fibromyalgia by examining King's case on its facts.

## IV. RECOMMENDATION

Being duly advised of all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT:**

    A.    The Plaintiff's Motion for Summary Judgment (Doc. No. 9) be **DENIED**.

    B.    The Defendant's Motion for Summary Judgment (Doc. No. 13) be **GRANTED**.

    C.    This case be **DISMISSED WITH PREJUDICE**.

Dated this 23rd day of July, 2007.

                                                   s/Jeanne J. Graham

                                                   JEANNE J. GRAHAM
                                                   United States Magistrate Judge

## NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this report and recommendation by filing and serving specific, written objections by August 9, 2007. A party may respond to the objections within ten days after service. Any objections or responses filed under this rule shall not exceed 3,500 words. The District Court shall make a de novo determination of those portions to which objection is made. Failure to comply with this procedure shall operate as a forfeiture of the objecting party's right to seek review in the United States Court of Appeals for the Eighth Circuit.