UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-2443(DSD/JJG)

Nancy J. King,

        Plaintiff,

v.                                        **ORDER**

Michael J. Astrue,
Commissioner of Social
Security Administration,

        Defendant.


This matter is before the court upon plaintiff's objections to the report and recommendation of United States Magistrate Judge Jeanne Graham dated July 23, 2007. In her report, the magistrate judge recommends that plaintiff's motion for summary judgment be denied and defendant's motion for summary judgment be granted. For the following reasons, the court adopts the report and recommendation in its entirety.


**BACKGROUND**

Plaintiff Nancy J. King ("King") seeks judicial review of a decision by defendant Commissioner of Social Security ("Commissioner") to deny her July 31, 2003 application for Social Security disability benefits dating back to June 2, 2000. (AR 64-67.) King's application was denied on November 4, 2003, and this decision was later affirmed upon reconsideration on February 5, 2004. (AR at 29-32.) King then requested an administrative hearing. At the June 23, 2005 hearing, an Administrative Law Judge

("ALJ") heard testimony from King, her husband, a neutral medical expert and a neutral vocational expert.  On October 25, 2005, the ALJ affirmed the denial of King's application.  (AR at 18, 28.) The Social Security Appeals Council later denied King's request for review, thus making the ALJ's determination the final decision of the Commissioner.  (AR at 6.)  King filed the present action on June 15, 2006 seeking judicial review of the ALJ's decision.

Magistrate Judge Graham recommends that summary judgment be granted in favor of the Commissioner.  The magistrate judge concluded that the ALJ appropriately determined that King retains the residual functional capacity to perform past relevant work. Specifically, the magistrate judge determined that the ALJ reviewed the evidence over the appropriate time frame, properly weighed the medical evidence, properly addressed King's subjective complaints of pain and understood the nature of fibromyalgia.  King objects to all of these conclusions.

## DISCUSSION

The court reviews the report and recommendation of the magistrate judge de novo.  See 28 U.S.C. § 636(b)(1)(c).  The court reviews the findings and decisions of the Commissioner under the substantial evidence standard.  See 42 U.S.C. § 405(g); Jackson v. Bowen, 873 F.2d 1111, 1113 (8th Cir. 1989).  This standard requires that the Commissioner's decision be based on evidence "that a

reasonable mind would find adequate to support the ALJ's conclusion." Nicola v. Astrue, 480 F.3d 885, 886 (8th Cir. 2007) (citing Lacroix v. Barnhart, 465 F.3d 881, 885 (8th Cir. 2006)). The substantial evidence test requires analysis of the record as a whole and consideration of evidence that both supports and detracts from the Commissioner's decision. Id. However, the substantial evidence test does not permit the court to "reverse the Commissioner's decision simply because there is evidence supporting a different result." Hall v. Chater, 109 F.3d 1255, 1258 (8th Cir. 1997). Rather, this court will disturb the ALJ's decision to deny benefits only if "the record contains insufficient evidence to support the outcome." Nicola, 480 F.3d at 885 (citing Culbertson v. Shalala, 30 F.3d 934, 939 (8th Cir. 1994)). In other words, the question before the court is whether, considering the entire record, a jury could have reasonably come to the same conclusion as the ALJ. See Allentown Mack Sales & Serv., Inc. v. NLRB, 522 U.S. 359, 366-67 (1998).

The Commissioner employs a five-step sequential analysis in making a disability determination. See 20 C.F.R. § 404.1520(a)(4). The ALJ must consider (1) whether the claimant has engaged in substantial gainful activity during the alleged disability period, (2) the medical severity of the impairments, (3) whether the impairments meet the criteria of any Social Security Income listings, (4) the claimant's residual functional capacity and past

relevant work and (5) whether the impairments precludes the claimant from engaging in other work.  See Goff v. Barnhart, 421 F.3d 785, 789 (8th Cir. 2005).

In this case, the ALJ considered these factors as of June 2, 2000 - King's alleged onset date of her disability.  Although King worked part-time until June 25, 2003, the ALJ's decision assumed that this work did not constitute substantial gainful activity. The ALJ concluded that King

> is severely impaired by degenerative joint
> disease of the thoracic spine, degenerative
> disc disease of the cervical spine, status
> post a laminectomy and fusion, fibromyalgia,
> migraine headaches, irritable bowel syndrome,
> bilateral hip bursitis, left knee patello
> femoral syndrome, bilateral carpal tunnel
> syndrome, status post releases, a history of
> asthma, chronic pain syndrome, a history of
> depression, and an anxiety disorder.

(AR at 20.) Nevertheless, at step three, the ALJ found that King did not suffer from an impairment or combination of impairments required to qualify for disability benefits under 20 C.F.R. § 404.1520(d).  (AR at 21.)  Rather, the ALJ concluded at step four that King retained the residual functional capacity to do light work, including past relevant work.  (AR at 21, 27.)  King argues that the ALJ's conclusion is not supported by substantial evidence in the record.  The court addresses her objections in turn.

**I.  Disability Onset Date**

On her application for disability benefits, King listed June 2, 2000, as her disability onset date.  (AR at 64.)  The ALJ

considered all evidence from that date forward in reaching its conclusion that King had "not been under a disability within the meaning of the Social Security Act at any time through [October 25, 2005]." (AR at 18.)  Before the magistrate judge, however, King argued that June 25, 2003 - her last day of work - was her disability onset date and thus, only evidence from that date forward should be considered. The court finds King's argument unpersuasive.

The ALJ's examination of evidence beginning June 2, 2000, is supported by substantial evidence.  Indeed, it was the only date King alleged as her disability onset date in both her benefits application and disability report. (AR at 64, 148.)  In addition, at the benefits hearing, the ALJ specifically referred to June 2, 2000, as the date of disability onset, and neither King nor her representative objected. (AR at 450.)  At no time during the hearing before the ALJ did King suggest that the alleged onset date was anything other than June 2, 2000.  Moreover, upon review of the record as a whole, the ALJ found that King had not been under a disability within the meaning of the Social Security Act at any time between June 2, 2000, and October 25, 2005. (AR at 18.)  For these reasons, the ALJ's consideration of evidence from June 2, 2000 forward is supported by substantial evidence, and the court adopts the magistrate judge's recommendation as to King's disability onset date.

## II.   Medical Evidence

King argues that the ALJ improperly considered the medical evidence by not giving significant weight to the opinion of one of King's treating physicians, Dr. Bergstrom.  The opinion of a treating physician must be afforded substantial weight when related to medical findings.  <u>See</u> <u>Miller v. Shalala</u>, 8 F.3d 611, 613 (8th Cir. 1993).  An ALJ, however, may discount a treating physician's medical opinion when the treating physician's statements are "conclusory, unsupported by medically acceptable clinical or diagnostic data, or when the ALJ's determination is justified by substantial evidence in the Record as a whole."  <u>Dornack v. Apfel</u>, 49 F. Supp. 2d 1129, 1143 (D. Minn. 1999); <u>see</u> <u>Rogers v. Chater</u>, 118 F.3d 600, 602 (8th Cir. 1997).

King had a cervical spine decompression and fusion in July 2001.  She began seeing Dr. Bergstrom in October of 2001 and has continued seeing him four times a year since then.  (AR at 294.) Throughout King's course of treatment, Dr. Bergstrom consistently indicated in his treatment notes that King suffered from severe fibromyalgia but that medications kept her pain under reasonable control.  Even after King injured her back on July 2, 2003, Dr. Bergstrom noted that by September 29, 2003, King's pain was "fairly well-controlled."  (AR at 396, 406.)  Although King apparently suffered periods where medication inadequately controlled her pain,

on November 19, 2003, Dr. Bergstrom noted that her medication was working very well.  (AR at 393.)

On December 18, 2003, however, Dr. Bergstrom completed a residual functional capacity ("RFC") questionnaire in which he concluded, among other things, that King could only occasionally lift up to ten pounds and could only stand or walk for less than two hours in an 8-hour workday.  (AR at 280.)  Moreover, he noted that King had severe postural limitations because "[s]he has pain when she does any one particular physical activity for more than 15 minutes."  (AR at 281.)  In a February 19, 2004, letter to the Mower County Human Services, Dr. Bergstrom stated that King's pain had worsened to the point where she could not do meaningful physical labor.  (AR at 391.)  Finally, Dr. Bergstrom indicated in an August 17, 2004, RFC questionnaire, that King "is unemployable and not likely to improve."  (AR at 213-16.)

The ALJ did not give significant weight to Dr. Bergstrom's opinion on the RFC questionnaires for three reasons.  First, the ALJ noted that Dr. Bergstrom's opinions in the questionnaire were "based largely on [King's] own reports of her symptoms and of her chronic pain."  (AR at 26.)  This conclusion is supported by substantial evidence.  Dr. Bergstrom's treatment notes indicate that he filled out the December 18, 2003, RFC questionnaire with

her, and nowhere do the notes indicate that his conclusions were based on anything other than King's responses to the questions. (AR at 218.)

Second, the ALJ concluded that the questionnaires were inconsistent with the limitations Dr. Bergstrom prescribed for King or with a finding of a disability. (AR at 27.) Throughout the course of treatment, King's pain appears to have been reasonably well controlled through medication. Although King suffered a back injury on July 2, 2003, Dr. Bergstrom's notes indicate that King was able to control her pain through medication. Moreover, at no point before the December 18, 2003, RFC questionnaire did Dr. Bergstrom suggest limiting King's behavior to the extent noted in that questionnaire.

Third, the ALJ concluded that Dr. Bergstrom's opinions were inconsistent with the opinions of two other treating physicians, Dr. Yaszemski and Dr. Alrajhi. Dr. Yaszemski treated King after her July 2001 cervical spine decompression and fusion.[1] On November 14, 2001, Dr. Yaszemski indicated that although King could no longer work in the kitchen at her job, she would be able to do less physically demanding work. (AR at 272.) Dr. Alrajhi treated King from January until July of 2002. King first visited Dr.

---

[1] The record does not indicate the duration and frequency of Dr. Yaszemski's treatment. It does indicate that he wrote a letter for King on November 14, 2001, and that he saw her on April 24, 2002.

Alrajhi on January 23, 2002, complaining of neck pain.  By June 10, 2002, however, Dr. Alrajhi noted that King's condition was "65-75% better in all aspects," and that she was ready to return to work. (AR at 171, 181.)   These opinions are consistent with Dr. Bergstrom's treatment notes during this same period.   They are inconsistent, however, with Dr. Bergstrom's 2003 and 2004 RFC questionnaires.  Therefore, it was within the ALJ's discretion to afford Dr. Bergstrom's opinion less weight because of the discrepancies, especially since the conclusions of the neutral medical expert, Dr. Steiner, comported with the opinions of Dr. Yaszemski and Dr. Alrajhi.

After reviewing the record as a whole, the court finds that there is substantial evidence supporting the ALJ's decision not to afford Dr. Bergstrom's responses to the RFC questionnaires significant weight.  Accordingly, the court adopts the magistrate judge's recommendations regarding the use of Dr. Bergstrom's opinion.

## III.  King's Subjective Complaints

After considering King's medical evidence, activities of daily living, medications and work history, the ALJ did not give controlling weight to her subjective complaints in determining her residual functional capacity.   Nevertheless, the ALJ gave some

weight to King's complaints and reduced her residual functional capacity accordingly.  (AR at 26.)  King argues that the ALJ should have given her subjective complaints more weight.

An ALJ may not ignore a claimant's subjective complaints solely because they are not fully supported by the medical evidence.  Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).  A court may, however, discount such complaints if there are inconsistencies in the evidence as a whole.  Id.  The ALJ "must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians."  Id.; see also Curran-Kicksey v. Barnhart, 315 F.3d 964, 969 (8th Cir. 2003).

King urges that a fair reading of her Activities of Daily Living ("ADL") questionnaire, which reflected a limited daily routine, does not support discounting her subjective complaints.  Nevertheless, as King noted in the ADL questionnaire, "she cooks, does light cleaning, shops, reads, watches TV, listens to music, grooms and bathes herself, visits with friends and relatives, does needle work, pays bills and handles finances, and goes out to movies."  (AR at 22.)  King also "reported that she does cross stitching, laundry with some assistance, goes for walks, and that she prepares meals."  (AR at 22.)  All of this supports the ALJ's treatment of King's subjective complaints of pain.

In addition to the ADL questionnaire, the Function Report completed by King's husband indicates that King has no problem following written or oral questions or getting along with authority figures.  (AR at 111.)  This accords with the psychological assessment conducted by Glenn C. Holman, Ph.D., on September 17, 2003, stating that King "evidences the mental capacities to concentrate on and understand verbal instructions," and that "[s]he would be expected to do reasonably well with co-workers and supervisors."  (AR at 208.)  Holman's assessment is inconsistent with King's subjective complaints that her mental impairments, together with her physical limitations, prevent her from working.

The record in this case reveals inconsistencies between King's subjective complaints of pain and objective evidence.  The contents of King's ADL questionnaire, the Function Report, a psychological assessment and the medical evidence discussed above can all be interpreted in support of the ALJ's decision.  Therefore, the ALJ's treatment of King's subjective complaints is supported by substantial evidence, and the court adopts the magistrate judge's recommendation as to King's subjective complaints.

## IV.  Nature of Fibromyalgia

Finally, King objects to the magistrate judge's conclusion that the ALJ appropriately understood the nature of fibromyalgia. "[F]ibromyalgia is a chronic condition which is difficult to diagnose and may be disabling." Pirtle v. Astrue, 479 F.3d 931,

935 (8th Cir. 2007); see also Garza v. Barnhart, 397 F.3d 1087, 1089 (8th Cir. 2005).  In this case, the magistrate judge correctly noted that the ALJ "did not find that fibromyalgia is not a disabling condition.  Rather, he found that King was severely impaired by a number of conditions, including fibromyalgia." King's attempts to distinguish Pirtle are unpersuasive.  As in Pirtle, "[a]fter finding fibromyalgia to be one of [King's] severe impairments, the ALJ thoroughly analyzed [King's] fibromyalgia and treatment thereof during the relevant period."  Pirtle, 479 F.3d at 935.  Based upon this analysis, the ALJ concluded that symptoms of King's "fibromyalgia have generally remained stable with medication therapy and exercise."  (AR at 26.)  Likewise, in this case the ALJ engaged in a thorough examination of the record and found that fibromyalgia contributed to King's disabling condition. Nevertheless, based on the medical evidence discussed in section II, the ALJ determined that King retained the residual functional capacity to perform past relevant work and thus she did not qualify for disability benefits.  Therefore, the court adopts the magistrate judge's recommendation regarding the ALJ's treatment of King's fibromyalgia.

Accordingly, after a de novo review of the motions, files and administrative record in this matter, and for the reasons stated, the court adopts the report and recommendation of the magistrate judge in its entirety.

**CONCLUSION**

Therefore, **IT IS HEREBY ORDERED** that:

1.    Plaintiff's motion for summary judgment [Docket No. 9] is denied;

2.    Defendant's motion for summary judgment [Docket No. 13] is granted.

Dated: September 6, 2007

s/David S. Doty
David S. Doty, Judge
United States District Court

13